UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERNESTO LARA,  )  <br> Plaintiff,  )  <br> )  <br> vs.  )  <br> )  <br> CAROL STOHRY, in her official capacity  )  <br> as County Clerk for Shelby County;  )  <br> THOMAS DEBAUN, in his official capacity)  <br> as Sheriff of Shelby County; FRANK J.  )  <br> ANDERSON, in his official capacity as  )  <br> Sheriff of Marion County,  )  <br> Defendants.  ) | 1:04-cv-1220-RLY-TAB |

**ENTRY ON DEFENDANT FRANK ANDERSON'S MOTION FOR SUMMARY JUDGMENT**

On September 20, 2002, Indianapolis Police Officer Jason Rakaska arrested Plaintiff Ernesto Lara on an outstanding warrant issued by Shelby County (the "issuing agency"). The Marion County Jail (the "holding agency") subsequently held Plaintiff on the Shelby County warrant until October 1, 2002, when custody of Plaintiff transferred to Shelby County. Plaintiff filed a claim under 42 U.S.C. § 1983 ("Section 1983") against Frank J. Anderson, in his official capacity as Marion County Sheriff, alleging the Marion County Sheriff's Department[1] ("MCSD") displayed a conscious indifference toward his constitutional rights. Sheriff Anderson now moves for summary judgment. For the

---

[1] Plaintiff's claim against the office of the sheriff is tantamount to a claim "against the municipality itself." *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998).

1

reasons set forth below, the court **GRANTS** his motion.

**I.     Facts**

    **A.     Underlying Facts**

On August 15, 2002, Judge Russell J. Sanders of Shelby Superior Court Two issued a bench warrant for the arrest of Ernesto Lara for failure to appear at a compliance hearing. (Plaintiff's Amended Complaint ¶ 15). On September 20, 2002, Lara placed a telephone call to the Indianapolis Police Department to report a burglary at his home. (*Id.* 16). Officer Jason Rakaska reponded to Lara's call. (*Id.*)  After investigating the burglary, Officer Rakaska arrested Lara on the outstanding arrest warrant issued by Judge Sanders. (*Id.* ¶ 17). The Indianapolis Police Department transported Lara to the Marion County Jail. (*Id.* ¶ 19). The Marion County Jail transferred custody of Lara to the Shelby County Sheriff's Department on October 1, 2002. (*Id.* ¶ 22). Lara contends that he was picked up from the Marion County Jail and dropped off at the Shelby County Jail at approximately 1:00 p.m. on either October 1, 2002 or October 2, 2002. (Plaintiff's Response to Defendant's First Set of Interrogatories Nos. 6 and 19). On October 2, 2002, Lara went before the Shelby County judge, the Honorable Russell J. Sanders, who ordered the release of Lara. (Plaintiff's Amended Complaint ¶ 23).

The Shelby County Sheriff's Department alleges they did not learn that the Marion County Jail held Lara until Marion County officials brought Lara to the Shelby County Jail on October 1, 2002, at 1:15 a.m. (Defendant DeBaun's Answer to Defendant Anderson's Interrogatory No. 4). However, the records of switched messages between

Marion County and Shelby County indicate that at 12:08 a.m. on September 21, 2002, "KRC" of the Shelby County Sheriff's Department confirmed the Shelby County warrant issued for Lara was still active. (Affidavit of Amber Helton ("Helton Aff.") ¶ 6). The confirmation issued by "KRC" in Shelby County stated "warrant is active place a hold we will extradite KRC 0008." (Helton Aff. ¶ 6; Exhibit A-1). The individual, "KRC", Kevin R. Carter, provides dispatch services for Shelby County and worked the late shift on September 20, 2002 and September 21, 2002. (Defendant DeBaun's Answer to Defendant Anderson's Interrogatory No. 3).

Additional records from the Marion County Jail ("the Jail") indicate that on September 21, 2002, at approximately 3:29 a.m., the Jail sent an additional communication regarding Lara. (Helton Aff. ¶ 8; Exhibit A-2).

### B. The Marion County Jail's Policy on the Hold and Extradition of Inmates

When the Marion County Jail receives inmates on warrants issued by other counties, they are classified in the general population of the Jail. (Affidavit of Zina Scaggs ("Scaggs Aff.") ¶ 3). The Jail then determines if local charges exist and sends a communication to central records, who then contacts the issuing agency – in this case, Shelby County – to inform them of any local charges. (Helton Aff. ¶ 9). It is then up to the issuing agency to contact the holding agency to make extradition arrangements. (*Id.* ¶ 1). Those arrangements are usually done over the telephone. (*Id.* ¶ 11). At that time, if no local charges are pending, the two agencies make arrangements for the pick-up or

drop-off of the inmate. (*Id*. ¶ 12). If ten (10) days go by without the issuing agency making arrangements with the holding agency for pick-up or drop-off, the holding agency will contact the issuing agency, stating they will let the inmate go unless arrangements are made. (*Id*. ¶ 13). If the inmate is held only for another agency, they do not receive a first appearance in front of a judge or magistrate at the Marion County Jail. (*Id*. ¶ 14).

### C. Grievance Cards

While being held for other agencies in the Marion County Jail, the inmate has access to grievance cards. The details of the grievance procedure are outlined in the Jail Inmate Handbook, which the inmate receives upon incarceration in the Jail. (Affidavit of Rachel Gohmann ("Gohmann Aff.") ¶ 6, 7). The grievance procedure allows inmates to complain about all aspects of jail life. (*Id*. ¶ 8).

## II. Discussion

The issue in this case is whether Plaintiff's detention at the Marion County Jail offended Plaintiff's right to due process under the Fourteenth Amendment.

In analyzing a claim of this nature under Section 1983, the court must engage in a three-step inquiry. First, does the Due Process Clause protect against an extended detention without an appearance before a magistrate? Second, does the defendant's conduct violate substantive due process? Third, does the totality of the circumstances shock the conscience? *Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998).

### A. The Due Process Clause Did Not Protect Plaintiff From Detention Under the Facts of this Case

While the Due Process Clause does protect an individual from prolonged detention without a first appearance before a magistrate, that principle does not apply in this instance. The Marion County Jail held Plaintiff for Shelby County authorities on a warrant from Shelby County. Thus, they had no jurisdiction to initiate his first appearance. In addition, as established by the facts of this case, authorities at the Marion County Jail took appropriate steps to ensure Plaintiff's transfer to Shelby County.

### B. Defendant's Detention Did Not Offend Substantive Due Process Standards

#### 1. The Deliberate Indifference Standard

Assuming arguendo that the Due Process Clause did protect Plaintiff, his claim would still fail under the facts of this case.

Because Plaintiff's claim arises in the prison setting, the standard for analyzing his constitutional claim is the deliberate indifference standard. *Id*. at 576. This standard is defined as a "conscious disregard of known and obvious dangers." *Id*. at 577. While courts traditionally treat the deliberate indifference question one of fact, its overlap with the third prong in the analysis – the totality of the circumstances test, which is a question of law – justifies its determination by the court. *Id*.

#### 2. The Marion County Sheriff's Department Did Not Deliberately Fail to Institute a Policy to Protect Plaintiff From the Type of Harm He Suffered

Plaintiff's claim against Sheriff Anderson, in his official capacity, hinges on his ability to show that the Marion County Sheriff's Department had a policy that caused the

alleged violation of his substantive due process rights. *Monell v. Dep't of Social Serv. of City of New York*, 436 U.S. 658, 690 (1978). Plaintiff does not allege that Sheriff Anderson had an affirmative policy which contributed to the constitutional deprivation; instead, he alleges that Sheriff Anderson failed to institute a policy to guard against the type of harm Plaintiff suffered. *Harris v. City of Marion*, 79 F.3d 56, 58 (7th Cir. 1996).

With respect to Sheriff Anderson's alleged failure to institute a policy, the case law is clear: "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Armstrong*, 152 F.3d at 578 (quoting *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986)). Consequently, Plaintiff must prove that Sheriff Anderson had actual knowledge of a problem with the policy (or nonpolicy) and that the policy "ignored a plainly obvious danger." *Id.*; *see also Harris v. City of Marion*, 79 F.3d 56, 58-59 (7th Cir. 1996) (to withstand summary judgment, the plaintiff must allege a series of potentially unconstitutional incidents or a clear duty to take action in light of a recurring situation).

Plaintiff's Response fails to designate supporting evidence proving actual knowledge of an alleged problem with Sheriff Anderson's extradition policy or that Sheriff Anderson ignored an "obvious danger." Moreover, Plaintiff's Response only discusses his own incident where an alleged "nonpolicy" led to a constitutional deprivation. One incident of negligence is insufficient to establish deliberate

indifference. *Armstrong*, 152 F.3d at 578. *See also Harris*, 79 F.3d at 59 ("One incident cannot be bootstrapped into a pattern.").

### 3. The Totality of the Circumstances Does Not Shock the Conscious

The last prong in the analysis is whether the totality of the circumstances surrounding the alleged deprivation of constitutional rights shocks the conscious. *Armstrong*, 152 F.3d at 581. Because what shocks the conscious tends to be a subjective judgment, the court must carefully consider this last prong. A comparison to *Armstrong, supra*. and *Coleman v. Frantz*, 754 F.2d 719, 723 (7th Cir. 1985), aids the court in this analysis.

In *Armstrong*, the plaintiff voluntarily turned himself in to the Allen County lockup after learning that a "body attachment warrant" had been issued for his arrest due to his failure to appear in court for a hearing regarding child support arrearages. *Armstrong*, 152 F.3d at 567. Although plaintiff was under the impression he would be in custody for a few hours, the sheriff's department held him for 57 days due to a misfiling on its part. *Id*. The court found that the sheriff's will call policy in getting inmates to court was deficient and that the sheriff's deputies routinely refused complaints made by inmates. *Id*. at 582. The court therefore held that "[w]hat happened to Walter Armstrong shocks the conscious." *Id*.

In *Coleman*, the plaintiff was arrested pursuant to a criminal bench warrant on a charge of receiving stolen property. *Coleman*, 754 F.2d at 721. Plaintiff was detained despite his repeated protests of innocence and inquiries into when he would go to court.

*Id.* The sheriff repeatedly called the prosecutor's office, and held the plaintiff while he awaited an answer. *Id.* at 721-22. After eighteen (18) days of confinement without a first appearance before a magistrate judge, the prosecutor called the sheriff and told him to release the plaintiff. *Id.* at 722. Although the court found that the sheriff's conduct violated substantive due process, *id.* at 723, the court held that the sheriff enjoyed qualified immunity, *id.* at 725.

While it is unfortunate that Plaintiff was held for approximately ten (10) days on a warrant that should have been recalled, the duration and circumstances of his detainment do not shock the conscious. In addition, Marion County did not have jurisdiction to bring Plaintiff in front of a judge or a magistrate for his first appearance, as could have occurred in *Coleman*. Lastly, the Marion County Jail did have a grievance procedure whereby inmates could complain about their confinement or ask questions about their confinement. In short, Sheriff Anderson is entitled to summary judgment.

### III. Conclusion

For all of the reasons stated above, the court **GRANTS** Sheriff Anderson's Motion for Summary Judgment on Plaintiff's Section 1983 claim.

**SO ORDERED** this 31st day of October 2005.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Laurel S. Judkins
OFFICE OF CORPORATION COUNSEL
ljudkins@indygov.org

Rafael Ramirez
RAMIREZ LAW OFFICE
ramirezlaw@aol.com

John Thomas Roy
ST. PAUL STAFF COUNSEL OFFICE
john.roy@stpaul.com